IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CANAL INDEMNITY COMPANY,          §
                                  §
                     Plaintiff,   §
                                  §  Civil Action No. 3:09-CV-0451-D
VS.                               §
                                  §
PALMVIEW FAST FREIGHT             §
TRANSPORTATION, INC., et al.,     §
                                  §
                     Defendants.  §

MEMORANDUM OPINION
AND ORDER

An insurer moves for summary judgment in this action seeking
a declaratory judgment concerning its duties to defend and
indemnify arising from a state court lawsuit.  Although the insurer
relies on two policy exclusions to avoid coverage, the dispositive
question is whether a reasonable jury could find that defendants
are entitled to recover on theories of waiver and equitable
estoppel.  The court concludes that a reasonable jury could not
find waiver but that it could find the insurer liable to one
defendant under a theory of equitable estoppel.  The court
therefore grants in part and denies in part the insurer's motion
for summary judgment.

I

Plaintiff Canal Indemnity Company ("Canal") sues defendants
Palmview Fast Freight Transportation, Inc. ("Palmview"), Flavio
Salinas ("Salinas"), and Ricardo Vela ("Vela"), seeking a
declaratory judgment concerning its duty to defend or indemnify

with respect to a state court lawsuit.[1] *See Salinas v. Palmview Fast Freight Transp., Inc.*, No. C-041-08-J (430th Dist. Ct., Hidalgo County, Tex.) (the "Underlying Lawsuit"). In the Underlying Lawsuit, Salinas was awarded damages, to be paid by Vela, for injuries Salinas incurred during the course of employment as a trucker working for Palmview and Vela. Canal had issued a policy of insurance (the "Policy") to "RICKY VELA d/b/a PALMVIEW FAST FREIGHT" as the named insured. The Policy was amended in 2006 to replace all mention of Vela with the corporate entity, "Palmview Fast Freight Transportation, Inc." P. App. 66-67.

In 2007 Salinas was severely injured while trying to unstrap a load on a truck that he was operating while employed by Palmview and Vela. Salinas brought the Underlying Lawsuit against Palmview. He added Vela as a party in 2008. Canal tendered defenses to

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to defendants as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

In its reply brief, Canal objected to certain statements in Vela's affidavit, contending that they are not based on personal knowledge. Because the court has not relied on any of Vela's statements that are not based on personal knowledge (e.g., the court has not relied on Vela's stated beliefs that the jury would have found in his favor had he participated at trial and that the jury would not have returned an adverse verdict for $302,396.90 had the toxicology report been properly proved up), the court overrules the objections as moot. Even disregarding this evidence, there are genuine issues of material fact that preclude summary judgment in Canal's favor.

Palmview and Vela under reservation of rights. Canal sent three reservation of rights letters. The first two were mailed to Palmview's address on January 29, 2009 and February 20, 2009, respectively. The third was mailed to Vela's personal address on October 8, 2009 and received by Vela's brother on October 13, 2009, the day the trial of the Underlying Lawsuit was scheduled to begin.

Canal hired Michele Gonzales, Esquire ("Gonzales") as defense counsel in the Underlying Lawsuit. According to Vela, Gonzales assured him that he was going to receive unconditional, individual representation. It is not clear from the record when Gonzales began representing Vela in his individual capacity. The first mention of Gonzales on the state court's docket sheet is on January 29, 2008. Gonzales filed an answer for Palmview at that time but did not file an answer for Vela. On February 20, 2009 Gonzales entered an appearance for Palmview, then reentered the case by filing a motion for continuance that referenced "defendant," "defendant's," and "defendants." Ds. App. 13. Gonzales later conducted discovery as if representing both Palmview and Vela, sending a request for discovery on behalf of "defendants" on February 25, 2009 and filing a motion to recuse on behalf of "defendants" on April 20, 2009. *Id.* at 17–41. On October 7, 2009 Lynse Larence Guerra, Esquire ("Guerra"), the attorney from Gonzales' law firm who entered an appearance at the pretrial hearing, expressed lack of knowledge concerning whether her firm

was representing Vela, individually, and whether an answer had been filed for Vela, even though the trial was less than one week away.

On October 8, 2009, just four days before trial, Salinas non-suited Palmview and elected to proceed against Vela. On Gonzales' advice, Vela did not appear or testify at trial.[2] Vela told Gonzales that Salinas had tested positive for cocaine immediately after the accident and that he wanted to assert this fact as a part of his defense at trial. But because Gonzales did not retain expert witnesses to testify about the test and did not authenticate the relevant medical records, the trial court excluded the evidence. The jury returned a verdict against Vela for $302,396.90. The judgment in the Underlying Lawsuit is currently on appeal.

Contending there is no coverage under the Policy, Canal seeks the following declaratory judgment relief:

> a. That no coverage exists under CANAL INDEMNITY COMPANY Policy No. L061223 for the claims made in and which form the basis of that particular lawsuit styled: Cause No. C-041-08-J; *Flavio Salinas v. Palmview Fast Freight Transportation, Inc.*; In the 430th Judicial District Court of Hidalgo County, Texas;

---

[2]According to defendants, Gonzales gave Vela this advice for two reasons: first, he is a male who lives and dresses as a woman, and the jury would not like a cross-dressing male who lives as a female; and, second, she felt there might be a defect in service, and, if a motion to quash citation were granted, it would be better that he not appear for trial and be served at that time.

b. That CANAL INDEMNITY COMPANY has no duty to indemnify or any obligation to pay the Final Judgment rendered against RICARDO VELA in Cause No. C-041-08-J; *Flavio Salinas v. Palmview Fast Freight Transportation, Inc.*; In the 430th Judicial District Court of Hidalgo County, Texas;

c. That CANAL INDEMNITY COMPANY had no duty to defend and has no obligation to continue to appeal the Final Judgment against RICARDO VELA in Cause No. C-041-08-J; *Flavio Salinas v. Palmview Fast Freight Transportation, Inc.*; In the 430th Judicial District Court of Hidalgo County, Texas;

d. That CANAL INDEMNITY COMPANY is entitled to recover reasonable and necessary attorney's fees expended in the prosecution of this Complaint; and

e. That CANAL INDEMNITY COMPANY is entitled to recover all other relief, general or special, at law or in equity, to which it shows itself entitled.

P. Mot. 2-3.

The Policy contains an Employee Exclusion clause and a Workers' Compensation Exclusion clause. Canal maintains, and defendants[3] do not dispute, that the Policy excludes coverage for the damages awarded to Salinas. Instead, defendants contend that Canal can be required, based on waiver or estoppel, to pay the damages awarded to Salinas and the legal fees incurred by Vela.

Defendants maintain that Canal waived the non-coverage argument by failing to adequately inform him before trial of its

_____

[3]In this memorandum opinion and order, the court refers to Palmview and Vela collectively as "defendants."

- 5 -

reservation of rights.  They also posit that, by assuming control over his defense and appointing an attorney who allegedly mishandled the trial to his prejudice, Canal is equitably estopped from avoiding financial responsibility for the defense provided.

Canal counters that waiver cannot expand the Policy in a way that adds new risks to the scope of coverage and that the elements of estoppel have not been met.  Canal argues that it never intentionally concealed the potential lack of coverage from Vela and that Vela already knew or had the means of knowing that Salinas' claims would not be covered by the Policy.

II

Although Canal would normally have the burden of proof at trial of establishing its right to a declaratory judgment, in Texas, an insured generally bears the initial burden of showing that a risk comes within the policy's coverage.  *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008).[4]  Moreover, in this case defendants rely on theories of waiver and estoppel, on which they will have the burden of proof at trial, to establish

_____

[4]This court applies Texas law in addressing the waiver and estoppel issues presented by Canal's motion.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).  To determine issues of state law, a federal court looks to the final decisions of the state's highest court, and in the absence of such a decision, the court must make an *Erie* guess as to how the state's highest court would resolve the issue if presented with the same case.  *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)).

that Canal has the duty to defend and indemnify Vela. *See* Ds. Br.
2 ("Defendants concede that the Employee Exclusion and the Workers
Compensation Exclusion . . . would normally eliminate coverage for
the claims made by Salinas. Thus, the evidentiary burden now
shifts to Defendants to show the Court that any particular
exceptions to non-coverage, such as the doctrines of waiver or
estoppel, apply in this case."). Therefore, Canal can obtain
summary judgment by pointing the court to the absence of evidence
on any essential element of the claim in question. *See Celotex
Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so,
defendants must go beyond their pleadings and designate specific
facts demonstrating that there is a genuine issue for trial. *See
id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th
Cir. 1994) (en banc) (per curiam). An issue is genuine if the
evidence is such that a reasonable jury could return a verdict for
defendants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986). Defendants' failure to produce proof as to any essential
element renders all other facts immaterial. *Trugreen Landcare,
L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007)
(Fitzwater, J.). Summary judgment is mandatory where defendants
fail to meet this burden. *Little*, 37 F.3d at 1076.

III

The court turns first to defendants' waiver theory.

A

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co.*, 262 S.W.3d at 778. The elements of waiver are "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.*

The parties do not disagree about whether Vela had coverage under the Policy for Salinas' claims in the Underlying Lawsuit. Nor do they dispute whether Canal actually knew that there was no coverage. In each of Canal's reservation of rights letters to Vela, regardless whether the letter was sent to Palmview's address or to Vela's residence, the subject line states "Our Insured: Palmview Fast Freight Transportation" and "Policy #: L061233," a policy that was specifically amended to replace all references to "Ricky Vela" with "Palmview Fast Freight Transportation, Inc." Although the salutations refer to "Mr. Vela" and frequently refer to him by use of a second person pronoun (e.g., "your interests" and "your behalf"), the letters do not indicate that Vela is individually insured under the Policy. *See* P. App. 118-19, 125-28, and 131-34. Even the October 8, 2009 reservation of rights letter,

sent to Vela's residence on the same day that Palmview was non-suited, only referred to "the allegations of the complaint against Palmview Fast Freight Transportation, Inc.," *id.* at 132; there was no indication that Vela was insured individually.

Defendants therefore focus their waiver argument on the third element: "the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." Because there is no evidence regarding Canal's intent to insure Vela individually, defendants ostensibly argue that Canal's appointment of Gonzales to represent Vela, Canal's delay in mailing a reservation of rights letter to Vela's residence address, and Gonzales' alleged promise to represent Vela "unconditionally" constitute "intentional conduct" inconsistent with preserving Canal's right not to defend Vela.

B

Defendants' argument lacks force. Under *Ulico* a "waiver" cannot rewrite a policy to create a completely new contractual liability. *See Ulico*, 262 S.W.3d at 775 (noting that "the insurer may be estopped from denying benefits that would be payable under its policy as if the risk had been covered, but the doctrines of waiver and estoppel cannot be used to re-write the contract of insurance and provide contractual coverage for risks not insured"). "In sum, if an insurer defends its insured when no coverage for the risk exists, the insurer's policy is not expanded to cover the risk

simply because the insurer assumes control of the lawsuit defense." *Id.* at 787.[5]

In the instant case, the Policy never purported to insure Vela, individually.  The Policy was in fact amended to eliminate all references to "Ricky Vela."  All of the reservation of rights letters refer to "Palmview Fast Freight Transportation" as the insured and to the claims in the Underlying Lawsuit alleged against Palmview.  And assuming *arguendo* that the last reservation of rights letter sent to Vela's residence address came too late to apprise Vela of his individual liability, the absence of a letter cannot create new rights for Vela; it can only reactivate existing provisions in the Policy by forfeiture, and no policy provision exists to support Vela's claim for individual coverage.  *See id.* at 782 ("Thus there is no 'right' of noncoverage that is subject to being waived by the insurer, even by assumption of the insured's defense with knowledge of facts indicating noncoverage and without obtaining a valid reservation of rights or non-waiver

_____

[5]This conclusion is not inconsistent with the court's decision in *Mid-Continent Casualty Co. v. Eland Energy, Inc.*, 2010 WL 610713 (N.D. Tex. Feb. 22, 2010) (Fitzwater, C.J.).  In *Mid-Continent* the court held that an insurer could waive conditions precedent intended to benefit it, tender policy limits to the insured, and terminate further obligations to the insured, *id.* at *1, provided the insurer was not attempting to terminate its duty to defend, *id.* at *2.  The court did not hold that *the insured* could rely on a theory of waiver to provide coverage for a risk that the insurer did not assume, and it did not create a contract covering a risk not assumed by the insurer.

agreement."). [6] Furthermore, if Canal and Gonzales induced Vela to relinquish control of his defense to his prejudice by agreeing to represent him "unconditionally," this is better analyzed as an estoppel, rather than a waiver, argument. In short, regardless whether Canal engaged in any act that could constitute waiver, Vela cannot create individual coverage under the Policy based on a theory of waiver.

---

[6]Defendants mischaracterize the statements in the *Ulico* concurrence when they assert that, "an exception to the rule [that waiver cannot create new insurance coverage] exists where a liability insurer assumes the insured's defense with knowledge of facts indicating noncoverage and then waives all of its policy defenses by not declaring a *timely* reservation of rights or obtaining a timely nonwaiver agreement." Ds. Br. 9. Not only is that interpretation foreclosed by the majority opinion in *Ulico*, the concurrence to which defendants cite posits no more than that "[i]f the insurer defends without reserving its rights, and the insured shows prejudice, the insured is entitled to recover the benefits that would have been due under the policy." *Ulico*, 262 S.W.3d at 793. An argument based on prejudice is an estoppel argument rather than a waiver argument. The *Ulico* concurrence was not particularly concerned with fleshing out this distinction in the *dicta*, surmising that whether coverage was "created" or whether the policy benefits were won through a finding of prejudice, "a rose by any other name would smell as sweet." In the present case, however, the distinction matters, because, as discussed below, defendants could potentially prevail via the estoppel doctrine even though they cannot based on waiver. Estoppel would provide a different measure of damages than would waiver because estoppel damages would be determined based on detrimental reliance rather than on any existing terms of coverage in the Policy. *Rhodes v. Chicago Insurance Co.*, 719 F.2d 116, 120 (5th Cir. 1983), a Fifth Circuit case that predates *Ulico*, does not compel a contrary conclusion.

IV

The court now considers defendants' theory of estoppel.

A

Estoppel is a separate argument from waiver, with separate elements. *Ulico*, 262 S.W.3d at 778. Unlike waiver, which is based on the insurer's intentional relinquishment of rights, estoppel is based on the insured's detrimental reliance. *See Perry Homes v. Cull*, 258 S.W.3d 580, 595 (Tex. 2008) ("Under Texas law, waiver may not include a prejudice requirement, but estoppel does."). As stated in *Ulico*,

> if an insurer defends its insured when no coverage for the risk exists, the insurer's policy is not expanded to cover the risk simply because the insurer assumes control of the lawsuit defense. But, if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions.

*Ulico*, 262 S.W.3d at 787. In other words, Canal can still be held accountable under the estoppel doctrine for any prejudice it caused, even if the defense was not covered under the Policy and there was no waiver of Canal's rights under the Policy. Although courts cannot judicially rewrite the parties' agreement to create new coverage terms, estoppel does not create a new contract: it only compensates for reliance damages that the insured suffers when the insurer takes over the insured's defense. *See id.* at 786-87 (distinguishing *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552

(Tex. 1973), from the now-disfavored rule in *Farmers Texas County Mutual Insurance Co. v. Wilkinson*, 601 S.W.2d 520 (Tex. Civ. App. 1980, writ ref'd n.r.e.), noting that the prejudice issue of estoppel is independent of the question whether an insurer sent a valid reservation of rights or non-waiver agreement).

The doctrine of equitable estoppel requires

> (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.

*Id.* at 778 (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998)).

B

The court holds that a reasonable jury could not find from the summary judgment evidence that Canal is estopped from declining to cover Palmview. Canal never purported to represent Palmview unconditionally. It sent at least two reservation of rights letters that specifically identified Palmview and the Policy, and it spelled out the conditions attached to its representation. A reasonable jury could not find that Canal made a false representation or that it concealed facts. Canal is entitled to summary judgment declaring that Palmview has no coverage for the claims made in the Underlying Lawsuit.

A reasonable jury could find, however, that Canal is liable to Vela individually based on a theory of equitable estoppel. In essence, Gonzales, as Vela's Canal-appointed lawyer, allegedly assured Vela that she would represent him individually and unconditionally. All three of Canal's reservation of rights letters identified Palmview, not Vela, as the insured, and identified by policy number an insurance policy that only covered Palmview. A reasonable jury could therefore find that Vela reasonably relied on Gonzales' personal assurances, rather than on Canal's letters regarding *Palmview*'s representation, in deciding, to his detriment, not to seek his own counsel.

1

A reasonable jury could find that Canal made a false representation of a material fact. Although Canal sent reservation of rights letters that included only Vela's name in the salutation, and the Policy does not cover Vela individually, a reasonable jury could find that the Canal-appointed attorney assigned to defend the Underlying Lawsuit expressly assured Vela that she would be representing him unconditionally. The jury could also find that this was a false representation: a promise of Canal-sponsored legal representation for Vela individually, when Canal did not intend to provide such unconditional individual representation. A reasonable jury could also find that this false representation was of a

material fact because Vela decided as a result not to obtain his own attorney to represent him in the Underlying Lawsuit.

2

A reasonable jury could also find that the Canal-appointed attorney's assurances, if made, were given knowingly, with Canal's assent, and with the intent of inducing Vela to entrust his individual defense to an attorney with Canal-defined priorities. Several facts in the summary judgment record could support such a finding. On the day that Palmview was non-suited from the Underlying Lawsuit, Canal sent its third reservation of rights letter, this time to Vela's personal address. A reasonable jury could infer from the letter, which informed Vela of continued representation, that Canal had been aware of Vela's reliance on earlier promises of representation. In fact, a reasonable jury could find that Canal bolstered Vela's reliance by reasserting its intention to investigate and defend Vela's interests in the Underlying Lawsuit after the named insured had been non-suited. Canal did not, for example, inform Vela that its provision of legal representation would be discontinued now that there was no suit pending against Palmview. In sum, a reasonable jury could conclude that Canal knew that Vela was not insured under the Policy, that Canal chose to provide representation anyway, and that Canal did so for strategic reasons. The handling of the reservation of rights form letters and the alleged defects in the quality of the defense

Vela received raise a genuine issue of material fact regarding Canal's motives in permitting or failing to correct the false representations.

3

A reasonable jury could also find that Vela had no knowledge of the true facts and no realistic means of obtaining the truth. Both sides admit that three reservation of rights letters were sent regarding Palmview's coverage—whether at the business address or at Vela's personal address—and that Vela's name was the one used in the salutation. All three clearly identified the Policy by number and the named insured, so that there could be no mistake that Canal's letters were referring to its services and reservation of rights regarding Palmview rather than Vela. Only the third letter is potentially ambiguous, since it still referred to Palmview as the only insured and referenced the Policy, yet the letter was sent on the day that Palmview was dropped from the case.[7] Given the clear identification of Palmview in the first two letters, and considering that the third, contextually ambiguous letter contained the same language as the second letter, a

_____

[7]Furthermore, such a letter would have arrived too late to foreclose an estoppel claim, as it would have arrived too late to prevent prejudice. *Cf. Ulico,* 262 S.W.3d at 782 (noting that, in *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, 485 F.2d 1169, 1175-76 (5th Cir. 1973), the insurance company was estopped from denying coverage because, among other things, it failed to notify the insured of possible lack of coverage, and the withdrawal of counsel occurred less than one month before trial).

reasonable jury could find that Vela, regardless whether he knew of Canal's coverage limits *with respect to Palmview*, was justified in interpreting these letters as inapplicable to his individual defense——a defense that Gonzales had promised him was "unconditional."[8]  Despite neglecting to file an answer for Vela until the day of trial, Gonzales conducted discovery on behalf of "defendants," provided advice tailored to Vela in his individual capacity on the strategic implications of trial participation, and continued to represent Vela at trial even after the insured was non-suited.  Given the circumstances, Vela's reliance on Gonzales' promises of unconditional representation could be viewed as reasonable, notwithstanding what Canal's letters stated about *Palmview*'s representation.

A jury could also reasonably find that Vela had no reasonable means of obtaining the truth about Canal's intentions.  His attorney did not advise him of the limitations of his individual representation, and even when pressed by the trial court in the Underlying Lawsuit, the attorney who entered an appearance on the defendants' behalf would not deny that Vela was receiving individual representation or clarify whether any conditions applied.  Canal itself never corrected Vela's belief that he was

---

[8]Whether Gonzales actually gave such an assurance, and the extent of Canal's involvement, are fact questions for trial. Gonzales' actions gave no particular notice to Vela that she was not his attorney.

being unconditionally represented, and it bolstered that belief by continuing to support his legal defense after Palmview was non-suited. With the lack of any indications to the contrary, and several to suggest that Canal was providing representation as Gonzales promised, Vela had no reason to rely on reservation of rights letters that referred to Palmview as the insured rather than on his Canal-appointed attorney's word.

4

Finally, a reasonable jury could find that Vela detrimentally relied on Gonzales' assurance of unconditional representation. "Texas estoppel law does not allow a party to withdraw a representation once the other party takes 'action or forbearance of a definite and substantial character.'" *Perry Homes*, 258 S.W.3d at 595 (citing *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997)). There must, however, be evidence of something more than speculative prejudice. *See Ulico*, 262 S.W.3d at 785-86 (holding that mere possibility of prejudice was insufficient justification for meddling with parties' agreements, and noting that estoppel tends to be upheld in cases involving actual prejudice); *Tilley*, 496 S.W.2d at 561 (declaring that court is only concerned with actual events in case rather than with speculative prejudice).

"The question on which the insurer's liability should turn is whether an insured is prejudiced as a result of the conflict, an

inadequate or absent disclosure, or other actions of the insurer."
*Ulico*, 262 S.W.3d at 786-87. Defendants present two theories to support their assertion of prejudice. First, they maintain that Vela was prejudiced because he was advised not to appear at trial. This alone is not enough to constitute prejudice, however, because the alleged harm from following his counsel's good-faith advice is purely speculative. The jury in the Underlying Lawsuit may have returned a verdict against Vela regardless whether he participated in the trial.

Defendants' second contention——that Gonzales was serving Canal's interests while representing Vela——presents a more viable theory of prejudice. *See id.* at 782 (noting that, in *Tilley*, 496 S.W.2d at 561, a Texas Supreme Court case, the court held that conflict of interest constituted prejudice as a matter of law when an attorney hired by the insurer for the insured's benefit also worked on building a policy defense for the insurer, and noting that the Fifth Circuit, in *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, 485 F.2d 1169, 1175-76 (5th Cir. 1973), found prejudice because of an apparent conflict of interest where insurer did not inform insured of potential conflict before assuming insured's defense). Relying on an assurance of unconditional individual representation, Vela opted not to seek his own counsel. Forgoing the right to choose one's own counsel could constitute an "action or forbearance of a definite and substantial

character"——meeting *Perry Homes*' definition of prejudice.  Given counsel's lack of preparation specific to Vela's individual defense, failure to file an individual answer before the day of trial, and failure to present an expert witness to prove up key evidence, there is sufficient evidence of conflict to make detrimental reliance a question of fact to be decided at trial.

Moreover, a reasonable jury could find that Vela's reliance was reasonable, because Canal never dispelled Vela's misunderstandings about the proper scope of Gonzales' representation, and it would have been easy enough to inform Vela that his counsel only represented Palmview, not Vela individually. Canal did send reservation of rights letters pertaining to Palmview's Policy, but a reasonable jury could find that the letters were ambiguous about whether they applied to Vela individually.  The January 29 letter informed Vela that it is "your right and privilege to retain counsel, at your own expense, to protect your interest," but the February 20 letter stated that "Canal has assigned the defense of this matter to Michele Gonzales to defend and protect you in this matter," and "[The firm's] job is to defend your interest in that suit.  You, and not Canal, will be their client."  The letters did not specify whether, by "your interest," they meant Vela's interest in the defense of Palmview or Vela's interest in his individual defense.  And the identification of Palmview as the insured at the top of the letter could have led

Vela to believe that the reservation of rights applied to Palmview rather than to him individually. Although the October 8 letter could be found to have been directed to Vela individually (because Palmview was non-suited from the Underlying Lawsuit on the same date), by then (five days before trial) it was too late to withdraw without prejudice or to surprise the client with an assertion that the reservation of rights attached to Palmview's representation had also applied to him individually all along. And a reasonable jury could find that the motion for leave to file second amended complaint——the November 3, 2009 document that finally stated in unambiguous terms Canal's position on Vela's representation——came too late to preclude prejudicial consequences for Vela.[9] *See Pac. Indem. Co.*, 485 F.2d at 1174-75 (holding that withdrawal that took place less than one month before trial not only "[did] not preclude a finding of prejudice, but compel[led] it," and noting as problematic that insurer assumed insured's defense without making further inquiry about noncoverage, then tried to rely on noncoverage as justification). This is especially true given that Vela had been served as a defendant in the Underlying Lawsuit on December 5, 2008, and Canal had over one year to explain to Vela

---

[9]Canal emphasizes that Vela was personally served with the first amended complaint in this action on September 14, 2009. But this pleading does not mention Canal's representation of Vela, focusing exclusively on Canal's arguments concerning Palmview. It was not until the second amended complaint that Canal sought any relief against Vela.

that he was not being represented individually, or that he was being represented individually but not unconditionally.

A reasonable jury could find that Vela's reliance on his insurer-appointed counsel was to his detriment. There is summary judgment evidence that Gonzales did not file an answer for Vela until the day of trial. The attorney from Gonzales' law firm who entered an appearance at the pretrial hearing admitted that she did not know whether her firm represented Vela individually, and that she was "not sure" about how Vela's individual defenses would differ from Palmview's. She was not even aware whether an answer had been filed for Vela. Although Vela had given counsel advance notice about Salinas' cocaine test results, which could have formed the basis of a comparative negligence defense, counsel failed to make basic preparations to properly admit the results into evidence, such as providing an expert witness to authenticate or interpret the results for the jury. *Cf. Pac. Indem. Co.*, 485 F.2d at 1175 (finding prejudice where counsel did not depose a "crucial witness"). A reasonable jury could find that Vela's ability to obtain discovery or pretrial resolution of his individual interests, aside from whatever aid he could receive incident to counsel's defense of Palmview, was compromised. The jury could also reasonably find that Vela's counsel treated his individual defense as an afterthought to her services to Palmview. And it could find that neither Canal nor Gonzales informed Vela that, in

receiving legal services from the Canal-appointed attorney, Vela would forfeit his rights to pursue an independent defense, or that his interests might conflict with Palmview's and therefore yield to Palmview's defense over his own.

To deny Canal's summary judgment motion, it is unnecessary to say precisely how Vela's defense might have been different had Canal not selected the same counsel to represent Palmview and Vela. *See id.* at 1176 (after listing several instances of neglectful representation, finding prejudice where insurer deprived claimant of the "opportunity to present a more forceful defense," but declining to speculate as to precisely how a "more forceful defense" might have been different from the one provided); *see also Ulico*, 262 S.W.3d at 786 ("It goes without saying that an attorney defending an insured has the obligation to fully disclose to the insured conflicts of interest, whether because of the attorney's relationship with the insurer or otherwise."). A reasonable jury could find that, in inducing Vela to forgo an individual defense, Canal deprived him of the opportunity to present a more forceful one.

The court therefore holds that a reasonable jury could find in favor of Vela on a theory of equitable estoppel, and it denies Canal's motion for summary judgment except to the extent granted above concerning Palmview.

*     *     *

For the foregoing reasons, the court grants in part and denies in part Canal's motion for summary judgment. The court declares that, under the Policy, Palmview has no coverage for the claims made in the Underlying Lawsuit.[10] The court otherwise denies the motion.[11]

**SO ORDERED.**

November 10, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[10]Canal may apply for an award of attorney's fees after the court enters a final judgment, under the procedure and in accordance with the deadline prescribed by Fed. R. Civ. P. 54(d).

[11]Canal has filed a motion for leave to file a reply appendix. Because the contents of the reply appendix are either already part of the summary judgment record or do not affect the resolution of Canal's motion, the motion is denied.